JAMES BROWN, plaintiff in error, *v.* THE PEOPLE OF THE STATE OF ILLINOIS, defendants in error.

### *Error to Grundy.*

To constitute the offence of having in possession a counterfeit Bank bill under the statute, three facts must conspire, and be proved by the prosecution: 1. possession of the Bank note; 2. the knowledge of its being counterfeit; and 3. the intention to pass it with a view to defraud.

The statute relating to the giving of instructions does not inhibit the Court from giving such instructions, as to the law of the case he thinks proper and conducive to justice, without their being asked, provided they are given in writing.

The Court may revoke an order issued for a special term, and appoint another time for holding the same.  The Judge is authorized to appoint a special term, either in or out of term.

INDICTMENT, for having in possession a counterfeit Bank note, &c., originally filed in the La Salle Circuit Court. The case was subsequently taken by change of venue into the Grundy Circuit Court.

At the June term 1847, an order was entered of record, appointing a term of the Court to be held on the 15th of November following. Afterwards, on the 25th of September, it being in vacation, the Judge revoked the former order and issued a second, directing the term to be held on the 22d day of November.

At the trial, the Court compelled the accused to acknowledge his identity in the presence of the jury and witnesses. An instruction was given by the Court, which is set out in the Opinion.

*T. L. Dickey*, for the plaintiff in error.

*D. B. Campbell*, Attorney General, for the defendants in error.

The Opinion of the Court was delivered by

KOERNER, J. Change of venue from La Salle. The defendant was indicted for having in his possession a counterfeit bill, knowing the same to be counterfeit, with the intent to defraud, &c.

On the trial of the cause, the Court instructed the jury, "that when the prosecution have proved circumstances sufficient to show that defendant knew the bill was counterfeit, the burden of proof rests upon the defendant, to show by proof where he got the bill, and under what circumstances he obtained it, or that he did not intend to pass it as genuine." To this instruction the defendant excepted, and now assigns it for error.

We cannot entertain a doubt that this instruction, taken by itself, was improperly given. In order to constitute the offence of which the prisoner was indicted, three facts must conspire, and have to be proved by the prosecution: 1. the the possession of the counterfeit Bank bill; 2. the knowledge of its being counterfeit; and 3. the intention to pass it with a view to defraud. If any of these ingredients are wanting, the offence is not complete, and the accused must be acquitted. The last one may be considered as being the

Brown *v.* The People.

most important of the three. Many persons receive coun-
terfeit bills innocently, consequently have them in their pos-
session, they ascertain that they are not genuine, and conse-
quently know it. But if they have no intention to pass the
same, how can they be said to be guilty of offence, yet if the
law was as indicated in the instruction, they would be held to
be so. It is very true that the intention of passing sel-
dom permits of positive proof, and in most cases it must
be made out from the circumstances surrounding the case,
but it has to be made out nevertheless, 'and before the jury
can be justified in pronouncing a verdict of guilty, they must
be satisfied of the fact of intention, as clearly as of the fact
of possession, and the fact of knowledge. Indeed, the last
mentioned fact is hardly ever susceptible of positive proof,
and often inferred from circumstances, but without its exist-
ence there could be no conviction.

The burden of proof according to all the principles of juris-
prudence never devolves upon the accused, until the prose-
cution has at least made out a *prima facie* case. The in-
struction given would be subversive of these principles, and
was consequently not warranted.

Another error assigned is, that the Court erred in modi-
fying two of the defendant's instructions, and in not giving
them in the terms asked. There is no force in this objec-
tion, as the law of the last session (1846-7,) does not in-
hibit the Court from giving instructions as to the law of the
case, such as he thinks proper, and conducive to justice,
without their being asked, provided such instructions are
given in writing. Any other construction of that law is not
warranted by its language, or consonant with sound sense.
If the instructions of the Court, or the modification of those
asked for by the counsel, contain substantially law ap-
plicable to the case, and asked for by counsel, the ob-
jects of justice are obtained, and the party has no right to
complain. The same view has been expressed in a case de-
cided at this term. *Vanlandingham* v. *Huston*, (*ante*, 125.)

It does not appear from the record, that the instructions given by the Court were not reduced to writing.

The counsel below also assigns an error, (abandoned by the counsel here,) in this, that the Court compelled the defendant to acknowledge his own identity in the presence of the jury and witnesses. We only notice this assignment of error for the purpose of disapproving, in the strongest possible manner, of the conduct of the counsel for the prisoner, in pertinaciously refusing to point out his client, and in persisting to advise him not to answer to his name, as is shown by the bill of exceptions. The Court undoubtedly ascribed this conduct to a misapprehension, on the part of the counsel, of his professional duty, and the generally laudable zeal of the advocate for his client, for otherwise he would have certainly vindicated the authority of the law by imposing a severe fine.

The error assigned for not arresting the judgment brings into view another point, which we desire to notice. It appears from the record, that the Judge of the seventh Judicial Circuit, according to the power vested in him by the legislature, (Laws of 1847, 28, § 6,) at the June term of the Grundy Circuit Court entered an order appointing a term in said county for the 15th November, 1847. The Judge afterwards, in vacation, made another order changing the term first appointed, to the 22d day of November, 1847.

It is contended that the Judge had no power to make this change, as his power over the subject was gone after the first appointment. We can see no good reason for this proposition. Usually, the legislature fixes the terms of Court, but in some cases it has delegated that power, for purposes of public convenience, to the respective Judges of the Courts. The power to appoint, as a general rule, implies the power to revoke. If the Court, for reasons satisfactory to himself, and in order to better consult the public interest, thought proper to set aside the first order, and appoint another time more convenient, we think he acted properly and within the

scope of his authority. That the order was made in vacation, cannot be objectionable, as the law authorizes the Judge to make the appointment of the term, which authority he can exercise either in term or out of term.

We are of opinion, then, that all the errors last noticed, are not well assigned; but for the one first mentioned, the judgment must be reversed and the prisoner discharged.

*Judgment reversed.*